UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| PLAQUEMINES PARISH SCHOOL BOARD | CIVIL ACTION |
|---|---|
| VERSUS | NO: 06-7213 |
| INDUSTRIAL RISK INSURERS, ET AL | SECTION: "S" (3) |

## ORDER AND REASONS

**IT IS ORDERED** that the motion for partial summary judgment to dismiss GE Insurance Solutions and Swiss Re Group (#153) filed by Defendant Industrial Risk Insurers and Westport Insurance Corporation is **DENIED**.

**IT IS FURTHER ORDERED** that the motion for partial summary judgment to dismiss plaintiff's bad faith claims (Doc. #168) filed by Defendant Industrial Risk Insurers and Westport Insurance Corporation is **DENIED**.

**IT IS FURTHER ORDERED** that the motion for partial summary judgment as to applicability of La. Rev. Stat.§22:658 and 1220 (Doc. # 169) filed by Defendant Industrial Risk Insurers and Westport Insurance Corporation is **DENIED**.

**IT IS FURTHER ORDERED** that the motion for partial summary judgment regarding damages and offset (Doc. #170) is **DENIED in part** in that defendant is not entitled to an offset for

any funds received by FEMA, and is **GRANTED in part** in that defendant may be entitled to an offset for any flood proceeds received by plaintiff which defendant proves is excluded from coverage.

**BACKGROUND**

Plaintiff Plaquemines Parish School Board filed suit in state court against the defendant insurers for additional insurance proceeds under an "all risk" policy issued to it prior to widespread damage to several educational buildings under plaintiff's control which was caused by Hurricane Katrina in August 2005.[1] On October 3, 2006, defendants removed this case to federal court.

It is undisputed that defendant's policy limits are $15 million, and that defendants have paid approximately $11.7 million.[2] The remaining dispute concerns the remainder of policy limits, and plaintiff's claim for bad faith damages, penalties and attorney's fees.

The defendant insurers seek partial summary judgment on several issues: the dismissal of GE Insurance Solutions and Swiss Re Group, the dismissal of plaintiff's bad faith claims, the application of La. Rev. Stat. §§22:658 and 1220, damages and offset, and the application of policy's flood exclusion and anti-concurrent causation clause.

Plaintiff moves for summary judgment relative to the burden of proof required at trial.

---

[1] In a separate suit, plaintiff sued its insurance broker, Arthur J. Gallagher Risk Management Services, Inc., and agent Bradley Johnson for damages arising from being underinsured for these losses. The court granted summary judgment in favor of Gallagher and Johnson, finding that "plaintiff had full knowledge of the value of its property when it decided not to obtain coverage in excess of $15 million." *See Plaquemines Parish School Board v. Arthur J. Gallagher Risk Management Services., Inc.*, No. 06-7663 (E.D. La.), Doc. #46, Order and Reasons.

[2] Defendants contends that $11,732,992 has been paid to plaintiff, while plaintiff contends that $11,742,442 has been paid.

**ANALYSIS**

**1. Legal Standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."[3] If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.[4]

**2. GE Insurance Solutions and Swiss Re Group (Doc. #153)**

The defendant insurers argue that Industrial Risk does business in Louisiana through its member company, Westport, which issued the policy of insurance over an Industrial Risk letterhead. In support of their motion, the insurers attach Industrial Risk's memorandum of insurance, which was issued to plaintiff. Defendants contend that GE Insurance Solutions and Swiss Re Group are merely trade names, and have no legal status, and should therefor be dismissed. Defendants also argue that plaintiff has not served Swiss Re and GE.

Plaintiff argues that defendants have not produced an affidavit attesting that GE and Swiss Re are merely brand names. Plaintiff alleges that Industrial Risk and Westport are wholly owned subsidiaries of GE and Swiss Re, which are liable for the acts and omissions of Industrial Risk and Westport. Plaintiff attaches deposition excerpts of David DiCenso, the claims director for Industrial Risk, who testified that Industrial Risk is wholly owned by Westport, which is owned by Swiss Re,

---

[3]*Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. Proc. 56(c).

[4]*Celeotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552 (1986).

and that until June 2006, Westport was part of GE.

Plaintiff also argues that GE and Swiss Re were served prior to removal. Plaintiff attaches counsel's affidavit which attests that service was achieved upon the Swiss Re and GE, through the Chief Executive Officer, Jacques Aigrain, via certified mail sent on September 22, 2006, with return receipts signed by Aigrain on September 25, 2006, prior to removal. Counsel's affidavits were filed into the state court record after removal.

The basis of defendants' motion is that GE and Swiss Re are merely brand names, incapable of being sued. DiCenso's deposition excerpts, which are not contradicted by evidence from the defendants, establish that GE and Swiss Re are companies, and not merely brand names incapable of being sued.

Further, for purposes of removal to federal court, service of process is governed by state law.[5] Under La. Rev. Stat. §13:3204A, service of process upon a nonresident is accomplished by plaintiff's counsel sending a certified copy of the citation "to the defendant by registered or certified mail, ... when the person to be served is located outside of this state ..." The affidavit of plaintiff's counsel establishes that GE and Swiss Re were served prior to removal. Plaintiff's post-removal filing in state court of the proof of service does not vitiate the fact that service was made under La. Rev. Stat §13:3204A.

The motion for partial summary judgment to dismiss GE Insurance Solutions and Swiss Re Group is **DENIED**.

---

[5]*City of Clarksdale v. Bellsouth Telcom., Inc.*, 428 F.3d 206, 210 (5th Cir. 2005).

**3. Plaintiff's bad faith claims (Doc. #168)**

Defendants seek a partial summary judgment dismissing plaintiff's bad faith claims on the grounds that Industrial Risk did not act in an arbitrary and/or capricious manner and accordingly, that plaintiff is not entitled to bad faith damages under La. Rev. Stat. 22:1220 and 22:658.

As the Fifth Circuit noted in *Dickerson v. Lexington Insurance Co.*, ___ F.3d ___, 2009 WL 130207 (5th Cir. 2009)(citations, quotes and footnotes omitted; emphasis in original):

> Under §22:1220, an insurer owes to its policyholders a duty of good faith in settling claims. Breach of the duty exposes an insurer to liability for damages via discretionary penalties, and attorney's fees via §22:658. Among the enumerated beaches of §22:1220's duty of good faith is failure to pay a claim within 60 days following receipt of satisfactory proof of loss *if* that failure is arbitrary, capricious, or without probable cause. In contrast, §22:658 subjects the insurer to penalties and attorneys' fees for its arbitrary and capricious failure to pay a claim within 30 days. A plaintiff may be awarded penalties under only one of the two provisions, §§22:1220 and 22:658, whichever amount is greater. He may, however, seek attorneys' fees under §22:658 while seeking damages and penalties under §22:1220.
>
> A plaintiff has the burden of proving that his insurer (1) received satisfactory proof of loss, (2) failed to pay within the required time, and (3) acted in an arbitrary and capricious manner. Arbitrary and capricious has virtually the same meaning under §22:1220 as it does under §22:658; courts interpret the phrase as synonymous with vexatious. [V]exatious refusal to pay means unjustified, without reasonable or probable cause or excuse. An insurer does not act arbitrarily and capriciously, however, when it withholds payment based on a genuine (good faith) dispute about the amount of a loss or the applicability of coverage.

Whether an insurer acted in good faith is a factual, not legal, determination.[6]

---

[6]*Dickerson*, 2009 WL 130207 at *7.

As the Supreme Court of Louisiana recently stated:

> [I]t is well settled that a satisfactory proof of loss is only that which is sufficient to fully apprise the insurer of the insured's claims. In addition, with regard to the form of a proof of loss, this court has stated that proof of loss is a flexible requirement to advise an insurer of the facts of the claim, and that it need not be in any formal style. As long as the insurer receives sufficient information to act on the claim, the manner in which it obtains the information is immaterial.[7]

Whether, and when, an insurer has a satisfactory proof of loss is also a factual determination,[8] and can occur through an inspection of an insurer's own inspection of the damaged property.[9]

Industrial Risk's adjustors, Gilbane CAT Response and Axis International, inspected plaintiff's properties in September and October 2005, and provided various detailed reports regarding the damage. On December 5, 2005, Industrial Risk provided plaintiff its first payment of $1 million, followed by another $2.5 million on February 2, 2006; $4.26 million on May 8, 2006; and $500,000 on August 4, 2006. Suit was filed in state court on August 28, 2006. On December 21, 2007, Industrial Risk paid to plaintiff $3,146,151, and in August 2008, it tendered an additional $362,842.

Plaintiff contends that Industrial Risk, through their adjustors, had sufficient proof of loss to trigger the time delays of §§22:1220 and 658; and that Industrial Risk's payments to plaintiff for

---

[7] *La. Bag. Co. v. Audubon Indem. Co.*, ____ So. 2d___, 2008 WL 5146674 at *23-24 (La. 2008)(quotes and citations omitted).

[8] *See Boudreaux v. State Farm Mur. Auto. Ins. Co.*, 896 So.2d 230, 236 (La. Ct. App. 2005).

[9] *See Mamou Farm Servs., Inc. v. Hudson Ins. Co.*, 488 So.2d 259, 264-65 (La. Ct. App. 1986)(where building was total loss, insurer had satisfactory proof of loss as of the date it inspected the building); *and Paul v. Nat. Am. Ins. Co.*, 361 So.2d 1281, 1284 (La. Ct. App. 1978).

wind damage were insufficient and untimely. Plaintiff points to the reports of Industrial Risk's experts, Gilbane and Axis, and their own experts, Kelly Spence and Paul Amoruso, who conclude after reviewing photos and Gilbane's reports that the wind damage exceeded the $15 million policy limits.[10]

As the Fifth Circuit has instructed, whether the insurer acted in good faith is a factual determination, and hinges on when the insurer received satisfactory proof of loss; whether the insurer failed to pay within the required time; and whether the insurer acted in an arbitrary and capricious manner in that the insurer's failure to pay was unjustified, without reasonable or probable cause or excuse. Plaintiff's evidence (e.g., reports from Gilbane, Axis International, and plaintiff's experts) raises questions of material fact as to the timing and sufficiency of proof of loss in Industrial Risk's possession, and as to whether Industrial Risk acted in good faith in delaying payment.

The court finds that questions of material fact preclude summary judgment as to whether defendants acted in bad faith under §§22: 1220 and 658, and the motion for partial summary (Doc. #168) is **DENIED.**[11]

**4. Applicability of §22:1220 and the new amendments to §22:658 (Doc. #169)**

The issue in this motion is whether the new amendment to §22:658 will apply in this case.

In June 2006, the Louisiana legislature passed an amendment that increased the penalty recoverable under La. Rev. Stat. §22:658 from twenty-five percent to fifty percent of the amount

---

[10] Defendants have filed motions *in limine* as to testimony and the reports of Spence and Amoroso (Docs. # 160 and 165, respectively).

[11] The court rejects defendants' argument that defendants' conduct after suit is filed is irrelevant or not probative. *See Dickerson v. Lexington Insurance Co.*, 2009 WL 130207.

claimant is owed, and it reinstated a provision for reasonable attorney's fees and costs.[12] These changes went into effect on August 15, 2006, and the Supreme Court of Louisiana has held that the changes are not applied retroactively.[13] However, while the Fifth Circuit acknowledged that the amendment to §22:658 is not retroactive, the court noted:

> At the same time, the *Sher* court left some room for holding that other late-occurring events might trigger §22:658, noting that if Sher had not yet submitted his satisfactory proof of loss, a petition for damages could have sufficed and that if damage is discovered after the first claim is made and the insurer fails timely to pay this additional claim, such a failure might give rise to penalties.[14]

Defendants contend that any bad faith claim accrued before the amendment's effective date because the loss, the claim, the adjustment of the claim, the inspection of plaintiff's property and Industrial Risk's determination of coverage occurred prior to August 15, 2006, the effective date of the amendment.

Plaintiff concedes that the amendment to §22:658 is not retroactive, but contends that its claim for increased penalties and attorney's fees is viable because it falls under the two *Sher* exceptions. Plaintiff argues that under *Sher*, even assuming Industrial Risk's argument that plaintiff never filed a satisfactory proof of loss, plaintiff's petition, filed after the effective date of the amendment could constitute satisfactory proof of loss, entitling plaintiff to increased penalties and attorney's fees. Further, the additional reports from Lapworth and Lichok on June 1, 2007, after the

---

[12]*See* 2006 La. Acts No. 813 §1.

[13]*See Sher v. Lafayette Ins. Co.,* 2988 So.2d 186, 196-97 (La. 2008).

[14]*Dickerson*, 2009 WL 130207 at *11 (*citing Sher*, 988 So.2d at 199-201).

effective date of the amended statute, provide estimates for school properties not included in the initial reports. Plaintiff contends that questions of material fact preclude summary judgment as to whether the new amendment applies.

The application of the amendment to §22:658 turns on when defendants had a satisfactory proof of loss, which is a factual determination. Defendants urge that plaintiff did not ever submit a satisfactory proof of loss, suggesting that §22:658 is triggered only upon plaintiff's submission of satisfactory proof of loss. A satisfactory proof of loss is a flexible requirement that does not depend on a formal submission by plaintiff.[15] Plaintiff does not seek to apply the amendment to those damages for which a satisfactory proof of loss was submitted prior to the effective date of the amendment, but seeks to apply the amendment to those damages for which a satisfactory proof of loss was submitted after the amendment's effective date.

There is a question of material fact whether the plaintiff's expert report, filed after the effective date of the amendment, constitutes satisfactory proof of additional loss to which the amendment will apply. The motion for summary judgment (Doc. # 169) is **DENIED**.

## 5. Damages and Offset (Doc. #170)

Defendants urge that any recovery under Industrial Risk's policy should be offset by amounts received by plaintiff from the Federal Emergency Management Agency (FEMA) or in flood insurance proceeds because plaintiff is not entitled to double recovery.

FEMA assistance is "intended to supplement assistance from other sources," not to serve as

---

[15]See *La. Bag. Co. v. Audubon Indem. Co.*, 2008 WL 5146674 at *23-24 (La. 2008) and discussion, *infra*.

a primary source of insurance.[16] Further, the Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act") directs the President to ensure that no entity "will receive such assistance with respect to any part of such loss as to which he has received financial assistance under any other program or from insurance or any other source."[17] Pursuant to this authority, FEMA does not provide assistance for damages covered by insurance and "must de-obligate" funds if it discovers that the damage is covered by insurance.[18] "Duplicated funding received from FEMA must be returned to FEMA."[19]

The court holds that plaintiff's receipt of FEMA funds has no bearing on plaintiff's ability to recover from defendants. The Stafford Act minimizes the possibility that plaintiff will recover twice for the same loss. FEMA does not obligate funds for damage already covered by insurance, and it has the power to recover funds already granted.

As to any flood proceeds received by plaintiff, the court notes that insurance contracts against loss are contracts of indemnity.[20] An insured cannot recover an amount greater than the loss and no

---

[16] FEMA, Disaster Assistance Policy 9525.3 (July 24, 2007).

[17] 52 U.S.C. §5155(a).

[18] *See* FEMA Disaster Assistance Policy 9525.3; FEMA, Disaster Assistance Fact Sheet Number 9580.3 (May 29, 2008).

[19] FEMA Disaster Assistance Policy 9525.3. *See also* 42 U.S.C. §5155(c) which provides:

> A person receiving Federal assistance for a major disaster or emergency shall be liable to the United States to the extent that such assistance duplicates benefits available to the person for the same purpose from another source. The agency which provided the duplicative assistance shall collect from the recipient in accordance with chapter 37 of Title 31, relating to debt collection, when the head of such agency considers it to be ni the best interest of the Federal Government.

[20] *Black v. First City Bank*, 642 So.2d 1512, 155 (La. 1994).

double recovery is permitted.[21] "When an insured has already received compensation for the full value of his or her property, he or she is not entitled to recharacterize as wind damage those losses for which he or she has already been compensated by previously attributing them to flood water."[22] "A plaintiff whose property sustains damage from flood and wind can clearly recover for his or her segregable wind and flood damages except to the extent that he seeks to recover twice for the same loss."[23] "Plaintiffs are entitled to recover ... any previously uncompensated losses that are covered by the homeowner's policy and which, when combined with their flood proceeds, do not exceed the value of their property."[24] At trial, plaintiff will have the burden of proving the amount of damage caused by the covered peril of wind, for which it seeks recovery under its commercial policy, and the defendant will have the burden of proving the applicability of the asserted exclusion of flood damage.[25]

The motion for partial summary judgment (Doc. # 170) is **DENIED in part** in that defendant is not entitled to an offset for any funds received by FEMA, and is **GRANTED in part** in that defendant may be entitled to an offset for any flood proceeds received by plaintiff which defendant proves is excluded from coverage.

---

[21] *See Johnson v. State Farm and Cas. Co.*, 2008 WL 2178059 (E.D. La. 2008); *Cole v. Celotex Corp.*, 599 So.2d 1058, 1080 (La. 1992) ("As a general rule the claimant may recover under all available coverages provided that there is no double recovery," *citing 15A Couch on Insurance 2d* §56:34 (1981)).

[22] *Cole*, 599 So.2d at 1080 (*citing Wellmeyer*, 2007 WL 1235042 at *3).

[23] *Cole*, 599 So.2d at 1080 (*citing Weiss*, 2007 WL 891869 at *2)).

[24] *Cole*, 599 So.2d at 1080 (*citing Weiss*, 2007 WL 891869 at *2)).

[25] *Camp v. National Fire and Indemnity Co.*, No. 07-7687 (E.D. La. 2009).

New Orleans, Louisiana, this 11th day of March, 2009.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**